Michael A. BUCCIERO, Sr.
vs.
Alfred T. DRINKWATER, et al

John F. COLLINS
vs.
Michael A. BUCCIERO, Sr., et al

Civ. A. No. 80-1085
Civ. A. No. 38248

Superior Court Department,
Trial Court of the
Commonwealth of Massachusetts

September 11, 1980

Steve T. Ladoulis for plaintiff.
Charles Statuti, Gerald Tishler, Anne
    Berger for defendant.

## MEMORANDUM OF DECISION

. These actions are consolidated for trial. Bucciero as plaintiff brings this action for specific performance of an option to purchase real estate owned by the defendants Drinkwater. Collins as plaintiff commenced an action for the return of $75,000 which represented the sum used as a deposit for the purchase of said real estate. There is no dispute among the parties that Collins is entitled to recover. The Court assumes that the $75,000 was retained in escrow to protect the Drinkwaters in the event Bucciero is successful in his action.

## FINDINGS OF FACT

1. In March 1979 Michael Bucciero and the Drinkwaters entered into an option agreement for the purchase of 73 acres of land in Wilmington and North Reading, Massachusetts for the sum of $1,600,000. Title in the land was in Alfred T. Drinkwater and Louis P. Drinkwater as trustees of the Drinkwater Realty Trust.

2. In April 1979 Bucciero exercised the option to purchase and the parties entered into an amendment extending the closing date from April 14, 1979 to August 14, 1979. Bucciero delivered $75,000 to Louis Drinkwater as the deposit provided in the option agreement.

3. John Collins had advanced the $75,000 deposit to Bucciero pursuant to a letter from Bucciero to Collins dated April 13, 1979 in which Collins was granted an equity interest in any project developed on the subject real estate.

4. At all times up to August 13, 1979 the record would seem to indicate that the Drinkwaters were not represented by counsel. On August 10, 1979 Attorney Jeffrey M. Freedman representing Bucciero and Collins sent a "mailgram" to the Drinkwaters asking for the name of their attorney by August 13, 1979.

5. On August 13, 1979 at approximately 2:00 P.M. the parties met at the office of Gaston, Snow and Ely Bartlett, attorneys for Shawmut Bank of Boston, which was to be the first mortgage lender. The purpose of the meeting was to go over the details of the closing to take place on August 14, 1979. Charles V. Statuti, Esq. attended the meeting as counsel for the Drinkwaters and Attorney Freedman as attorney for Bucciero and Collins. There were several areas of disagreement concerning the option agreement which Attorney Statuti believed was unfavorable to his clients. (As an aside the Court notes that on August 13 the attorneys sat down with two agreements which were replete with handwritten amendments put in by their respective clients acting without counsel, and as a result the agreements were not only confusing, they were not even identical).

6. One principal area of disagreement was the language relating to the payment of taxes. The option provided that the taxes which are due for the year "in which the option is exercised and all [due and] subsequent years" are to be paid by buyer. The words "due and" were handwritten over and between "all" and "subsequent." Bucciero took the position that he was only liable for taxes for the year ending June 30, 1979 and thereafter, while the Drinkwaters contended that the buyer was required to pay all unpaid taxes regardless of when accrued. The sellers' interpretation of the tax clause was reasonable and correct. While the handwritten addition may have created some ambiguity, the interpretation urged by the buyer would make the addition of the word "due" meaningless. There was no evidence presented as to the amount of the taxes for the year 1979 but the total amount of taxes owed was approximately $84,000. The Court infers and finds that there was a substantial sum due in back taxes prior to 1979. Attorney Freedman testified, and the Court so finds, that there was no decision reached between the parties on the issue of taxes at the meeting of August 13, 1979.

7. The meeting ended at 5 P.M., and the bank and buyers agreed to meet at the same place for closing at 11 A.M. on August 14, 1979. Attorney Statuti said there was no reason to meet the following day.

8. Bucciero and Collins and their attorney were present at the appointed time and place on August 14, 1979. The relevant closing documents had been prepared including the promissory note, mortgage, title certificate, and various checks in accordance with the terms of the option. Among the prepared checks were two for $83,414.16 and $756.77 respectively, being the total of all back taxes due on the subject property. There was no evidence when Bucciero had decided to pay all of the back taxes and no evidence that this decision was communicated to the Drinkwaters or their attorney. At 10:45 A.M. Attorney Statuti called and stated that neither he nor his clients would appear at the closing and that no deed would be tendered. Statuti was not told that the buyer was going to pay the back taxes.

9. On September 6, 1979 Collins wrote Bucciero terminating their agreement to enter into a joint venture, requesting the return of his $74,000, and suggesting that Bucciero retain his own attorney.

10. The parties met on August 16, 1979, September 18, 1979 and October 2, 1979 to discuss termination and/or modification of the option agreement but no understanding was reached. In view of the Court's

determination of the issues involved these later meetings became immaterial.

11. In each action against the Drinkwaters there is an answer alleging a counterclaim for a $25,000 additional deposit not paid by the buyer. On April 13, 1979 Bucciero and the Drinkwaters signed an agreement extending the option until August 14, 1979. The agreement stated, "In consideration of that extension the Buyer would deliver to you an additional $25,000 deposit." The word "deposit" is crossed out and initialed by Louis Drinkwater. This additional $25,000 was not to be a deposit but rather part of the cash purchase price to be payable at the closing. The checks presented on August 14, 1979 reflected this increase in the purchase price. The Court finds that the Drinkwaters are not entitled to retain any part of the $75,000 as an additional deposit or consideration for extending the option.

### RULINGS OF LAW

1. Bucciero and the Drinkwaters entered into a valid, binding option agreement which was duly exercised with a closing date of August 14, 1979.

2. On August 14, 1979 Bucciero was ready, willing and able to purchase the property.

3. The terms of the sale were never agreed upon between the parties. The tax clause as interlineated was ambiguous and resulted in a substantial difference in the purchase price. Bucciero knew on August 13 that the Drinkwaters were not going to tender a deed unless all back taxes were paid, and his decision to pay said taxes, was not communicated to the sellers or their attorney at any time prior to the closing. Under the existing circumstances the sellers had no duty to tender a deed or to be present for a proposed closing.

4. The buyer was entitled to a return of his deposit from the sellers on August 14, 1980. The agreement between Collins and Bucciero to enter into a joint venture was effectively terminated by Collins' letter of September 6, 1979. Thus, Collins became entitled to the return of the deposit.

### JUDGMENT

In case #80-1085 Judgment to enter for the defendants and no judgment as to the intervenor.

In Suffolk case #38248 Judgment to enter for plaintiff against all defendants in the sum of $75,000 there to be but one recovery. Counterclaim — Judgment of dismissal to enter.

Gerald F. O'Neill, Jr.
District Court Judge
Sitting in Superior Court